# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARTHA HORNBY,

        Plaintiff,

    v.

ENDLESS MOUNTAIN
BEHAVIORAL HEALTH CENTER,
INC.,

        Defendant.

No. 4:25-CV-00465

(Chief Judge Brann)

## MEMORANDUM OPINION

### SEPTEMBER 23, 2025

## I.    BACKGROUND

On March 13, 2025, Plaintiff, Martha Hornby, ("Hornby"), filed a three-count complaint against Defendant, Endless Mountain Behavioral Health Center, Inc. ("Endless Mountain"). On May 9, 2025, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The motion is now ripe for disposition; for the reasons that follow, it is denied in part and granted in part. However, Plaintiff will be provided leave to amend the complaint.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[1] and *Ashcroft v. Iqbal*,[2] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[4]

A plaintiff in an employment discrimination case does not need to establish a prima facie case in his or her complaint.  The United States Court of Appeals for the Third Circuit has clarified this point, stating: "a complaint need not establish a prima

---

[1]    550 U.S. 544 (2007).
[2]    556 U.S. 662 (2009).
[3]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[4]    *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) (internal quotations and citations omitted).

facie case in order to survive a motion to dismiss."[5]  The plaintiff need only plead "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the elements of her claim.[6]

### B.    Facts Alleged in the Complaint

The facts alleged in the complaint, which this Court must accept as true for the purposes of this motion, are as follows.

Hornby works in marketing and public relations.[7] By 2023, she had over 15 years of experience, focusing specifically in healthcare and human services marketing.[8]

Endless Mountain hired Hornby in August of 2023.[9] She was brought on to fill the position of "Outreach Coordinator" at Endless Mountain's rehabilitation facility.[10] As Outreach Coordinator, Hornby was "department director level."[11] Endless Mountain leadership positions were filled largely by non-minority employees while Hornby was employed there.[12]

---

[5]    *Id.* at 788.
[6]    *Id.* at 789.
[7]    Doc. 1 (Compl.) ¶ 10.
[8]    *Id.*
[9]    *Id.* ¶ 8.
[10]   *Id.*
[11]   *Id.* ¶ 9.
[12]   *Id.* ¶ 11 ("[Endless Mountain's] diversity statistics were abysmal with respect to its leadership positions.").

From the beginning of her time at Endless Mountain, Hornby excelled at her work.[13] In her New Hire Competency Review, Hornby received the highest possible score in 22 out of 24 categories and did not receive a negative score in any category.[14] Endless Mountain CEO, Terry Drake, ("Drake") conducted this review.[15] Hornby worked 50 to 60 hours per week during her employment.[16] To note, Drake was not required to work over 40 hours per week.[17]

In January 2024, Endless Mountain hired a new CMO, Kevin Hecht ("Hecht").[18] Hecht had far less experience than Hornby.[19] Hecht was to be paid a higher salary than Hornby and worked fewer hours than her.[20] Drake led an introductory meeting with Hecht and Hornby, where Hecht stated that he wanted someone with "more experience" to lead the marketing department of Endless Mountain.[21] After this, Drake informed Hornby that she would no longer need to attend leadership meetings.[22]

Tensions between Hecht and Hornby grew during their shared employment tenure.[23] When she requested time off after working for 14 days straight, Hecht

---

[13] *Id.* ¶ 12.
[14] *Id.* ¶ 14.
[15] *Id.*
[16] *Id.* ¶ 13.
[17] *Id.* ¶ 44.
[18] *Id.* ¶ 15.
[19] *Id.* ¶ 20.
[20] *Id.* ¶¶ 43, 44.
[21] *Id.* ¶ 19.
[22] *Id.* ¶ 23.
[23] *Id.* ¶¶ 27-38.

denied it.[24] Hecht informed Hornby that, in addition to her other responsibilities, he expected her to have five in-person meetings, five outreach emails, and five outreach calls completed each day.[25] This was an "entirely impossible metric for [Hornby's] performance."[26] As Hornby alleges and as I must assume is true, Hecht intended to push her out of the company.[27]

Hornby contacted Endless Mountain's Human Resources ("HR") department to discuss these issues.[28] In February 2024, an HR representative held a meeting with Hornby, Hecht, and Drake.[29] In this meeting, Hornby reported that Hecht forbade her from using her Paid Time Off ("PTO") and required her to meet all her assigned daily tasks regardless of how many hours it took.[30] Hecht countered that Hornby was struggling to complete assignments, that long hours were normal in this industry, and that Hornby should work from home if she needed a day off.[31] Hecht also told Hornby that she should address problems with him directly without involving HR.[32]

About a month after this meeting, in March, Hecht emailed Drake with an ultimatum; if he kept Hornby employed, Hecht would quit.[33] Drake fired Hornby.[34]

---

[24] *Id.* ¶ 27.
[25] *Id.* ¶ 29.
[26] *Id.* ¶ 30.
[27] *Id.* ¶ 30.
[28] *Id.* ¶ 31.
[29] *Id.* ¶ 32.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* ¶ 33.
[34] *Id.* ¶¶ 34-36.

Hornby had received no disciplinary actions, negative reviews, or write-ups during her time at Endless Mountain.[35] Upon termination, Endless Mountain told her only that she was no longer a "good fit" for the company.[36]

Two other employees appear in Hornby's complaint.[37] A male employee, Dan Kizale ("Kizale"), was Endless Mountain's Clinical Director. Hornby received "public complaints" about Kizale and Drake received "similar complaints" about Kizale from staff.[38] Kizale was not required to work over 40 hours per week.

Additionally, another woman worked at Endless Mountain.[39] A "Ms. Farell" resigned in January 2024 because she had been forced to work much longer hours than her male counterparts.[40] When she resigned, Drake called Ms. Farell "too emotional."[41]

Defendant filed the instant motion and brief in support on May 9, 2025.[42] Plaintiff filed a brief in opposition on May 29, 2025.[43] Defendant's reply brief was filed on June 11, 2025.[44]

---

[35]  *Id.* ¶ 57.
[36]  *Id.* ¶ 34.
[37]  *Id.* ¶¶ 16, 17, 24.
[38]  *Id.* ¶¶ 16-17. What these complaints are, Plaintiff does not say.
[39]  *Id.* ¶ 24. The complaint does not describe Ms. Farell's identity, her job title, responsibilities, nor her relevant status in the company hierarchy.
[40]  *Id.* ¶ 24.
[41]  *Id.*
[42]  Doc. 9 (Motion); Doc. 10 (Brief in Support).
[43]  Doc. 11 (Brief in Opposition).
[44]  Doc. 12 (Reply Brief).

### C.    Analysis

Plaintiff brings three claims in her complaint: sex discrimination in violation of the Civil Rights Act of 1964 ("Title VII"), retaliation in violation of Title VII, and both discrimination and retaliation in violation of the Pennsylvania Human Relations Act ("PHRA").[45] In addition to the defendant's 12(b)(6) motion, Defendant claims that Plaintiff's brief should be barred under local rule 7.6,[46] as it was filed six calendar days after the deadline.[47]

I address the timeliness issue first. I have discretion to depart from our local rules and will do so here because defendant has not alleged any unfair prejudice suffered from the violation.[48] Plaintiff is cautioned, though, of the importance of filing deadlines and is instructed to refrain from filing late again.

### 1.    Hornby's Sex Discrimination Claims Under Title VII And The PHRA.

The elements of a sex discrimination claim Under Title VII are as follows: 1) plaintiff is a member in a protected class; 2) plaintiff was qualified for the position sought to attain or retain; 3) plaintiff suffered an adverse employment action; 4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.[49]  The elements under a PHRA sex discrimination claim

---

[45]  Doc. 1.
[46]  Doc. 13 (Reply Brief) 1-2.
[47]  Doc. 12 (Brief in Opposition).
[48]  *United States v. Eleven Vehicles*, 200 F.3d 203, 215 (3d Cir. 2000).
[49]  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir 2013).

and those under a Title VII claim are identical; accordingly, I analyze them simultaneously.[50] Moreover, the *McDonnell Douglas* burden shifting framework does not yet apply at the motion to dismiss stage.[51] Whether Defendants here could supply an innocent reason for their conduct is not yet relevant to the inquiry. Hornby has alleged that she is female and, as such, is a member of a protected class. She has also alleged that she was qualified for the job, having over 15 years of experience and more experience than other employees holding leadership positions. She was fired, which is an adverse employment action.[52] The only element in dispute for the instant motion is the last one: whether the circumstances could give rise to an inference of discrimination.

There are several routes that plaintiffs can take to raise an inference of intentional discrimination. The road most trod is comparator evidence, or evidence that an employer treated similarly situated individuals not in a plaintiff's protected class more favorably than the plaintiff.[53] The Third Circuit has recently clarified who plaintiffs may use as a comparator: employees "need not be identical" but must be similarly situated in "all material respects."[54] Relevant factors in this analysis include "whether the employees dealt with the same supervisor, were subject to the

---

[50]   *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000).

[51]   *Dreibelbis v. Cnty. Of Berks*, 438 F. Supp. 3d 304, 315 (E.D. Pa. 2020); *Swierkiewicz v Sorema*, 534 U.S. 506, 511-12 (2002).

[52]   *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001).

[53]   *See Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 721 (E.D. Pa. 2021).

[54]   *See Qin v. Vertex, Inc.*, 100 F.4th 458, 474 (3d Cir. 2024).

same standards, and shared similar job responsibilities."[55] The Third Circuit also stated that employees cannot be similarly situated if they hold a different job title or work in a different department.[56]

Here, Plaintiff cannot use the comparator evidence route to arrive at an inference of discrimination. Under Third Circuit precedent, the fact that Plaintiff has not pled another employee with the same job title was treated differently bars this avenue.[57] Even without referencing her job title, Plaintiff's complaint substantially lacks facts showing that she is similarly situated to any other employee. Of the three factors to analyze, job responsibilities, standards, and supervision, Plaintiff has adequately pled none.[58]

First, the only facts pled about job responsibilities indicate that she has different, not similar, ones from her claimed comparators. Hornby has pled that she

---

[55] *Id.*

[56] *See Qin v. Vertex, Inc.*, 100 F.4th 458, 474 (3d Cir. 2024). *Qin*'s rule, that an employee is not similarly situated to a comparator who holds a "different job title *or* works in a different department," 100 F.4th at 474 (emphasis added) appears to be a departure from the previous standard as described in *Mandel v. M & Q Packaging Corp.*, where the Third Circuit held that an employee who holds a "different job *in a* different department" is not similarly situated. 706 F.3d 157, 170 (3d Cir. 2013) (emphasis added). The more expansive "or" from *Qin* may bar any employee with a unique position at a company from using comparator evidence, but because Hornby's other claimed comparators fall far short of sufficiency, it does not carry the analysis here. Other courts in this District have already discerned and analyzed this discrepancy as well. *See Bassett v. Pennsylvania Dep't Corr.*, No. 24-CV-2024, 2025 WL 2656065 at *8 n.6 (M.D. Pa. Sept. 16, 2025); *Russin v. Wal-Mart Stores East, LP*, No. 22-CV-872, 2025 WL 608627 at *11 n.8 (M.D. Pa. Feb. 25, 2025) ("Based on Third Circuit precedent [in *Qin*], the court cannot consider this comparator evidence.").

[57] *See Qin*, 100 F.4th at 474.

[58] *See Mandel*, 706 F.3d at 169-70.

was Outreach Coordinator[59], that at one point she had to attend leadership meetings[60], that she frequently was "on call,"[61] and that she had to attend five in person meetings, send five new outreach emails, and make five new outreach calls a day in addition to her "other responsibilities."[62] Besides that, the complaint does not explain what her job responsibilities actually entailed. More importantly, Hornby fails to describe how her duties compared to those of any other employee. The complaint does not describe Hecht's responsibilities aside from saying that he is "CMO" and apparently sets Hornby's duties. Drake's responsibilities are similarly lacking description, explaining only his role in reviewing Hornby's performance and in hiring decisions. Moreover, the complaint is completely silent about Kizale, noting only that he is Clinical Director who apparently receives a considerable number of complaints. In the facts pled, there is no overlap between the job responsibilities of these three men and the enumerated responsibilities of Hornby.

So too with job standards. It is contended that Hornby received a performance review with "24 categories."[63] But the Court does not know what those categories are, whether that same review was given to the other employees, nor whether other employees were held to the same standards.

---

[59]  Doc. 1 ¶ 8.
[60]  Doc. 1 ¶ 23.
[61]  Doc. 1 ¶ 13.
[62]  Doc. 1 ¶ 29.
[63]  Doc. 1 ¶ 14.

Additionally, as Defendant points out, none of the claimed comparators had the same supervisor as Hornby. Indeed, Hecht apparently supervised Hornby as he was in a position to grant or refuse Hornby's requests for days off.[64] And even those completely unfamiliar with business hierarchy should be aware that the CEO is top of the corporate food chain. Kizale's supervisor is once again unknown. Thus, at this point, Plaintiff has pled no evidence of any of the three factors that would situate her similarly to Hecht, Drake, or the unknowable Kizale.

However, contrary to Defendant's position[65], comparator evidence is *not* the only way to raise an inference of discrimination; there is also a road less traveled. An inference of discrimination "could be supported in a number of ways, including, *but not limited to, comparator evidence*, evidence of similar . . . discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting . . . animus."[66] In this case, Plaintiff has pled sufficient facts to raise a reasonable expectation that discovery will reveal evidence of the elements of her claim, and, therefore, Count I survives defendant's motion to dismiss.[67]

---

[64] Doc. 1 ¶ 27.

[65] Doc. 10 (Brief in Support) 6-7.

[66] *Golod v. Bank of America Corp.*, 403 F. App'x 699, 702 (3d Cir. 2010) (emphasis added); *see also Mammen*, 523 F. Supp. at 721 (E.D. Pa. 2021) (quoting *Golod*).

[67] *Connelly*, 809 F.3d at 789 (3d Cir. 2016).

Plaintiff's complaint contains just enough "evidence of similar . . . discrimination of other employees" and "evidence of discrimination from statements or actions by her supervisors suggesting . . . animus" to survive a motion to dismiss.[68] Hornby and another female employee were forced to work over forty hours per week while other male employees were not.[69] Hornby was given an unreasonable workload allegedly intended to push her out of the company: she was bequeathed a Cinderella list of impossible daily tasks to complete, told she cannot use her PTO, required to work fourteen days straight, and forced to be "on-call" 24/7.[70] She was told not to go to HR with her problems.[71] Another woman quit for similar unreasonable workload complaints and was called "too emotional" by Drake, the same CEO who fired Hornby.

Hornby has alleged that her unreasonable workload and firing were motivated by gender bias.[72] She has alleged that her supervisor treated her unreasonably because she was a female, that her protestations were unanswered by higher management because she was a female, and that she was fired because she was

---

[68]  *See Golod*, 403 F. App'x at 702.

[69]  *Cf. Maldonado v. City of Allentown*, No. 25-CV-1673, 2025 WL 2467682 at *10-13 (E.D. Pa. Aug. 27, 2025) (requiring plaintiff to plead specific ways in which workers were treated "more favorably"); *see Thornton v. Analog Devices, Inc.*, No. 22-CV-2392, 2023 WL 3627830 at *2-4 (E.D. Pa May 24, 2023).

[70]  Doc. 1 ¶¶ 27-30.

[71]  Doc. 1 ¶ 32.

[72]  Doc. 1 ¶¶ 50, 52, 56.

female.[73] As a consequence, she has alleged a causal connection between the circumstances of her firing and a discriminatory animus from Endless Mountain.[74]

Ms. Farell's similar experiences tip the scales in Hornby's favor.[75] Indeed, that the two women both believed they had to work longer hours than their male allows an inference that discrimination was at play in the Endless Mountain office. Moreover, Drake told Ms. Farell explicitly that she is "too emotional" upon her exit from the business, around the same time as Hornby's complained about difficulties with Drake and the company. Women often experience negative stereotyping in the workplace for their emotions.[76] This comment is slight evidence of Drake's alleged gender bias. "Isolated remarks unrelated to employment decisions, without more, do not make discrimination cases" but can "corroborate other, stronger evidence of

---

[73] Doc. 1 ¶¶ 54, 56.

[74] *Cf. Emerson v. Stern & Eisenberg, P.C.*, No. 21-CV-3096, 2022 WL 10208548 at *15 (E.D. Pa. Oct. 17, 2022) (granting a motion to dismiss because plaintiff did not "allege any causal link" between the claimed evidence of discrimination and the decision to terminate). Unlike in *Emerson*, Hornby alleged the causal link.

[75] *See e.g. Swanson v. Salvin Dental Specialties, Inc.*, No. 23-CV-00247, 2023 WL 4374412 at *8-9 (E.D. Pa. July 6, 2023) (holding that another employee's similar experience, combined with the suspicious circumstances of his own firing, can show "the inference of gender animus by [defendant] management team.") While the argument in *Swanson* focused on the plaintiff's replacement employee being outside the protected class, the analysis is analogous: Hornby has some evidence of suspicious firing and cites to another woman's experiences in addition.

[76] *Dennison v. Ind. Univ. of Pa.*, No. 20-CV-1563, 2022 WL 3213657, at *10 (W.D. Pa. Aug. 9, 2022) (noting that "courts in other circuits have found that comments made to female employees that decisions that are based on their 'emotions' can be indirect evidence of gender discrimination.").

13

discrimination."[77] Ms. Farell's experiences alone do not carry the day, but they push this claim across the line from conceivable to plausible.

The facts as pled can each be independently explained. But, as a whole, taking these allegations as true and drawing reasonable inferences in Hornby's favor, the complaint plausibly raises an inference of sex discrimination under Title VII and the PHRA.[78] Although the complaint is "not as rich with detail as some might prefer, it need only set forth sufficient facts to support plausible claims."[79] Therefore, Plaintiff has the better argument, and Defendant's motion to dismiss will be denied for Count I and Count III as it relates to sex discrimination.

### 2.    Hornby's Retaliation Claim Under Title VII And The PHRA.

Hornby's complaint fails to state a plausible claim for retaliation under Title VII and the PHRA. The elements a plaintiff must show for a claim of retaliation are that (1) she was engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected

---

[77] *Ewell v. NBA Properties, Inc.*, 94 F. Supp. 3d 612, 624 (D.N.J. 2015) (explaining that when considering whether stray remarks are probative of discrimination, courts consider the relationship of the speaker to the employee, the purpose and content of the statement, and the temporal proximity of the statement to the adverse employment action).

[78] *See Williams v. Pa. State Police*, 481 F. Supp. 2d 424, 429 (W.D. Pa. 2007) ("In analyzing whether a plaintiff has established a prima facie case, the court cannot confine its analysis to the individual pieces of evidence alone but must view the record as a whole picture. . . . This is because a play cannot be understood on the basis of some of its scenes but only on its entire performance.") (internal quotations and citations omitted).

[79] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211-12 (3d Cir. 2009).

activity and the adverse activity.[80] The elements of a retaliation claim under the PHRA are the same as under Title VII.[81]

In sum, Plaintiff has simply not pled sufficient facts to raise a plausible claim of retaliation. Specifically, she has not pled facts sufficient for element 1 or 3; neither that she was engaged in a protected activity nor that there was a causal link between any protected activity and her firing.

Title VII bars employers from retaliating against employees who report workplace gender discrimination.[82] Title VII does not cover complaints of generally unfair treatment.[83] To be protected, the employee must have unequivocally reported poor treatment that he or she believed was motivated by discrimination.[84] Workplace complaints or reports are not protected when an employee fails to communicate to the employer his or her belief that the complained about treatment was motivated by discrimination.[85]

Here, Hornby's complaints of retaliation are threadbare. The complaint states that Hornby reported "the disparate treatment she received at Endless Mountain,"[86] but her factual allegations do not support this conclusion. Hornby's complaint notes

---

[80] *See Moore v. City of Philadelphia*, 461 F.3d 311, 340-41 (3d Cir. 2006).
[81] *See Hussein v. UPMC Mercy Hosp.*, 466 F. App'x 108, 111-12 (3d Cir. 2012).
[82] *Moore*, 461 F.3d at 341 (3d Cir. 2006).
[83] *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).
[84] *Qin*, 100 F.4th at 476 (3d Cir. 2024).
[85] *Id.* ("[O]ur precedent requiring opposition to the unlawful conduct 'not be equivocal' precludes retaliation claims where the employee fails to communicate to the employer his belief that he suffered discrimination.") (quoting *Barber*, 68 F.3d at 702).
[86] Doc. 1 ¶ 64

a meeting with HR where she reported unfair treatment such as being forbidden from using PTO, forced to work long hours, and required to stay on call for two weeks at a time.[87] However, nowhere in the complaint does Hornby allege that 1) she believed such unfair treatment was caused by discrimination at the time of that meeting nor that 2) that she told management as much. The complaint has not set forth sufficient facts to establish a protected activity. Moreover, because there is no protected action, the element of causation is "necessarily lacking as well."[88]

## III.    CONCLUSION

Defendant's motion to dismiss pursuant to Rule 12(b)(6) is denied as to Plaintiff's sex discrimination claims under Title VII and the PHRA and granted as to Plaintiff's retaliation claims under the same provisions.  Plaintiff is granted leave to amend. "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[89]  But the law in the Third Circuit is clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[90]

---

[87]    Doc. 1 ¶ 32.

[88]    *Wilson v. Columbia Gas of Pennsylvania*, 676 F. Supp. 3d 424, 438 (W.D. Pa. 2023). Additionally, the complaint is internally inconsistent as to the cause of Hornby's firing. The complaint strongly implies that the reason for Hornby's firing was Hecht's alleged "ultimatum" to Drake, then switches course and claims she was fired after she reported discrimination. The complaint does not state any reason for why Hecht gave his ultimatum and does not connect it to Hornby's reporting.

[89]    *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

[90]    *Id.* (quoting Fed. R. Civ. P. 15(a)).

16

Plaintiff will therefore be given fourteen days from today's date to file an amended complaint.  If no amended complaint is filed, the dismissed counts will be subject to dismissal with prejudice.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge